IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCGHEE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

IZAIAH MCGHEE, APPELLANT.

Filed April 25, 2023.    No. A-22-914.

Appeal from the District Court for Douglas County: MOLLY B. KEANE, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ronald C. Betita for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Izaiah McGhee, age 16, was charged with two firearm offenses following an incident where he allegedly fired multiple shots at a residence in Omaha, Nebraska. He appeals from the Douglas County District Court's order denying his request to transfer the criminal proceedings against him to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

According to police records, shots were fired at McGhee's residence in Omaha on July 17, 2022, in the early morning hours. McGhee, age 15 at the time, and his older sister, Aryon Tate, age 22 at the time, were at that residence when the shooting occurred. After the police arrived and were investigating the shooting, McGhee and Tate were caught on an officer's body camera video leaving the residence in a grey Kia vehicle at approximately 6:07 a.m. Approximately 12 minutes later, shots were fired at a residence near North 87th and Sahler Streets. Video captured a grey Kia

vehicle registered to Tate at that location and McGhee was seen exiting the front passenger seat and firing multiple shots towards a residence on Sahler Street. McGhee and Tate were arrested a couple days later.

A criminal complaint was filed against McGhee in the county court for Douglas County on July 20, 2022, alleging two offenses: discharging a firearm while in or in proximity of any motor vehicle at a person, dwelling, building, structure, or occupied motor vehicle in violation of Neb. Rev. Stat. § 28-1212.04 (Reissue 2016), a Class IC felony; and use of a deadly weapon (firearm) to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016), a Class IC felony. McGhee waived a preliminary hearing and the case was bound over to district court where an information containing the same counts was filed on August 9.

McGhee filed a motion to transfer the proceedings to juvenile court on August 30, 2022, and a hearing on his motion took place on November 1. A summary of the evidence follows.

## 1. STATE'S EVIDENCE

The State offered exhibit 1, a certified copy of a prior juvenile court proceeding involving McGhee, and exhibit 2, police reports associated with the present criminal proceeding. The exhibits were received without objection.

### (a) Prior Juvenile Court Proceeding

In November 2021, a petition was filed in the separate juvenile court for Douglas County alleging four offenses committed by McGhee. Two counts were subsequently dismissed by the State and McGhee entered a plea of admission to the other two counts, which the juvenile court accepted after first advising McGhee of the possible consequences and determining that the plea was freely, knowingly, voluntarily, and intelligently given after making inquiry into the factual basis. McGhee was adjudicated for carrying a concealed weapon pursuant to Neb. Rev. Stat. § 28-1202 (Cum. Supp. 2022), a Class I misdemeanor, and possession of a handgun by a minor pursuant to Neb. Rev. Stat. § 28-1204 (Reissue 2016), a Class I misdemeanor. In December, he was placed under the supervision of a probation officer subject to terms and conditions of probation which directed McGhee to: reside with his mother and follow her rules, attend school without any unexcused absences and complete school assignments, refrain from using alcohol or controlled substances, not be in the company of anyone using or in possession of alcohol or controlled substances, submit to drug testing, comply with electronic monitoring, submit to searches, participate in gang intervention programs, participate in a co-occurring evaluation, participate in day/evening reporting at his probation officer's discretion, obey a "zero curfew," and not associate with those not approved by the probation officer and McGhee's parents. An attorney was subsequently appointed as "limited representation education counsel" for McGhee. McGhee was also later directed to participate in and successfully complete "Level 1 Outpatient Treatment, to include individual and family therapy," participate in in-home family services, and participate in a pro-social activity at school or in the community.

In an order entered on April 11, 2022, the juvenile court found that McGhee had not consistently attended school, had tested positive for marijuana, and was non-participatory with service provider meetings. The court directed the probation officer to apply to "Group Home level of care" for McGhee. On April 25, the State filed a motion to revoke McGhee's

"probation/supervision," claiming he failed to: attend all sessions of school and be of good behavior, refrain from use of alcohol or controlled substances, participate in gang intervention services, participate in level one outpatient therapy, and participate in a pro-social activity at school or in the community. On May 10, an order was entered revoking probation, but placing McGhee "back under the supervision" of a probation officer subject to similar conditions as previously directed. The order also directed the probation officer to apply to "Shelter Care-level of placement for crisis stabilization" for McGhee, as well as to continue to apply for group home care. As of a June 1 "Check on Placement Order," the court noted that a group home or shelter care had not yet been found for McGhee, and that the probation officer reported improvements since the last hearing.

In an order entered July 19, 2022, the juvenile court found that McGhee's home "was shot at early Sunday morning, July 17, 2022, in what appears to be a targeted gang attack." It further found that McGhee was "not engaging in any services, did not earn summer school credits due to his negative behaviors, was discharged unsuccessfully from Multi-systemic Therapy, and continues to test positive for marijuana." The court found that McGhee was a "serious threat to persons in the community when he first came before the Court in November of 2021" and had "not alleviated this risk." The court determined that it would be in McGhee's best interests to be placed outside the parental home, including shelter placement. McGhee was ordered to be detained at the Douglas County Youth Center. The State filed a motion to revoke probation on July 20.

(b) Police Reports Related to July 17, 2022, Incident

The police reports reveal that at approximately 4:44 a.m. on Sunday, July 17, 2022, officers were dispatched to McGhee's residence on a report of gunshots fired. Officers collected seven .45-caliber casings and one .40-caliber casing. An officer's body camera video showed that at approximately 6:07 a.m., McGhee and Tate got into a grey Kia vehicle and left the premises. Tate was driving. Approximately 12 minutes later, shots were fired at a residence located near North 87th and Sahler Streets. Video showed the same grey Kia that had just left the McGhee residence 12 minutes earlier now located near the residence on Sahler Street. Video showed McGhee, wearing the same clothing observed in the officer's body camera video at McGhee's residence, exiting the front passenger seat of the grey Kia and firing multiple shots towards a residence on Sahler Street. Seven 9-mm casings were recovered at the Sahler Street shooting. The following day, a bullet hole was discovered in the front room window of the Sahler Street home.

A no-knock search warrant was subsequently executed at McGhee's residence. Casings from the Sahler Street shooting were later matched to a 9-mm firearm found at McGhee's residence. Tate indicated that the firearm belonged to her although it was located in a purse belonging to another woman. Tate was interviewed at police headquarters and said "she was the only person at the house that actually had a firearm." She denied knowing who shot at McGhee's house, that she was sleeping in her room downstairs and McGhee was sleeping upstairs in his room. Tate said that when the police showed up after "the house got shot up," she left and went to her "godsister's house." Tate claimed she left with McGhee and dropped him off at their friend's house which was next to her "godsister's house" "off of 50th and Grover Street." Based on "video information," a reporting officer concluded there was "no possible way" that McGhee and Tate could have been near 50th and Grover at that time. McGhee and Tate were arrested on July 19.

## 2. McGhee's Evidence

McGhee called his juvenile probation officer as a witness and offered multiple exhibits in support of transferring his case to the juvenile court.

### (a) Juvenile Probation Officer's Testimony

Aimee Hough, a juvenile probation officer specialized in "high risk" clients, testified that she had been working with juvenile probation "a little over three years." Prior to that she worked with juveniles for 10 years with PromiseShip and Nebraska Family Collaborative. She became familiar with McGhee when assigned as his probation officer in November 2021, at which time he was adjudicated in the juvenile court for carrying a concealed weapon and possession of a firearm. Hough testified that if McGhee's case was transferred to juvenile court, it was likely there would be a recommendation for out-of-home placement, and if that was not successful, then they "would probably do . . . a motion to commit at YRTC [Youth Rehabilitation and Treatment Center]."

Hough discussed the co-occurring evaluation conducted by LaTaunya Riley, noting Riley's recommendation for "Level 1 out-patient with a duly diagnosed therapist." Hough explained this would be weekly therapy with someone licensed to provide mental health services as well as substance use therapy. Hough noted that Riley diagnosed McGhee with "oppositional defiant," which Hough understood to be a disorder that impacts a juvenile's "decision making and their impulse control in regard to decision making."

Hough also discussed McGhee's education, recalling that when he started his probation in the juvenile case, he was in the 9th grade and had an individualized education program (IEP), which was "related to his needs for special assistance in his schooling, but also related to his behaviors." Hough testified that McGhee was appointed an educational rights attorney whose role is to "help ensure that a youth's or juvenile's educational rights are met." According to Hough, they are appointed "when probation or DHHS feels like a youth is not being best served by the school and that they need a stronger advocate behind them to ensure an IEP . . . is being followed legally." While under Hough's supervision, McGhee went from "basically having zero presence attendance in school to . . . attending maybe three days a week." He went from failing all classes to "D's."

When Hough began her supervision of McGhee, he was rated as "high risk." Hough described services that were offered to McGhee, such as "gang intervention, family support, individual and family therapy, . . . MST which is multi-systemic therapy, it's an in-home intensive program." McGhee was offered "GPS and electronic monitoring" which "if he wasn't going to school full days or in the summer he was offered that for extra supervision as well." Hough acknowledged that McGhee told her he was associated with the "Flat Line [sic] Gang." Hough recalled times when McGhee was not following court orders, and prior to the current charges, was being considered for out-of-home placement in state and out of state, such as "Boys Town, Omaha Home for Boys, Canyon State in Arizona and Hillcrest in Cincinnati." The out-of-state placements had accepted him, although on cross-examination, Hough acknowledged the acceptances occurred before the current charges. Also on cross-examination, Hough acknowledged that the two Omaha placements had denied McGhee. One denial was because "[t]hey felt he was not committed to the program" and "they felt like he was too high risk for what they could offer," basically because of the gun charge. The other Omaha placement denied him because of a conflict of interest. In

Hough's opinion, the time remaining for the juvenile court's jurisdiction over McGhee would be enough time for him to complete the services she had discussed. These included in-state or out-of-state group homes, or the highest level of placement would be at the YRTC, where there are treatment programs, "MRT," art groups, cognitive behavioral groups, individual therapy, psychiatrists if needed, and "programming, schooling." McGhee was presently placed at the Douglas County Youth Center and was "actively participating in his educational services" and a gang intervention program called the "U-Turn Program."

On cross-examination by the State, Hough confirmed that for someone to go to the YRTC, there must first be a hearing where a judge determines whether probation has exhausted all reasonable efforts in terms of providing services to the juvenile and that the juvenile is not amenable to services. She acknowledged that if an individual is at the YRTC and is still noncompliant or not rehabilitated, the individual would be "unsuccessfully terminate[d] . . . from juvenile probation," meaning "there's no recourse the juvenile court can provide."

When Hough was asked whether there was any evidence-based intervention to address gang involvement, or evidence-based therapeutic treatment or intervention to address the illegal possession of firearms, or therapeutic intervention or programming for somebody who attempts to shoot another human being, Hough responded, "No," in each instance. Hough confirmed that McGhee was under her supervision for carrying a concealed weapon and possession of an unregistered firearm, and that between December 2021 and July 2022, he was being offered services to address his behavior regarding those charges. Hough also confirmed that McGhee's probation had been revoked because of continued positive drug testing for "THC which is marijuana," overall lack of engagement in services, and although attendance in school had improved, there had been several missed days and "unreported whereabouts at school."

Hough confirmed that McGhee had identified as a "Flat Land" gang member, which was a "Blood Gang." Hough stated that in July 2022, McGhee was receiving services for "gang intervention . . . multi-systematic [sic] therapy, individual and family therapy, drug testing, family team meetings and probation check-ins." Given that McGhee fired a gun at an occupied house, Hough acknowledged that those services had not been successful. Hough also agreed that there was no specific therapeutic intervention or treatment available to address the specific behaviors of McGhee "attempting to shoot at an occupied dwelling." Further, Hough affirmed that if McGhee was transferred to the juvenile court and McGhee "continued to display similar behaviors or similarly failed to participate and successfully complete services," he would be unsuccessfully terminated and would be "released back in the community with absolutely no supervision, no services in place, and he'd be free to do as he pleases at the age of 19."

On re-direct, Hough expressed that she still believed McGhee would benefit from services in juvenile court, noting that "we like to exhaust all efforts" and McGhee had not yet been "placed in a shelter, group home or YRTC." She stated that the Douglas County Youth Center did individual therapy, but they do not have family therapy or rehabilitative community services or cognitive groups, "[b]asically they're in detention." Although the Douglas County Youth Center offers education, individual therapy, and medication management, it did not "offer any rehabilitative services or group services that are offered in group homes other than YRTC."

The defense offered exhibit 3, a co-occurring evaluation by Riley conducted and reported in December 2021; exhibits 4 and 5, progress reports by Riley dated April 4 and July 13, 2022; exhibit 6, an IEP reflecting a meeting date of August 31, 2021; exhibit 7, an IEP report dated March 21, 2022; exhibits 8 and 9, reports by a family support worker for counseling sessions held in February, March, May, and June 2022; exhibit 10, a May 26, 2022, email from probation officer Hough; exhibit 11, a "report of education counsel" filed with the juvenile court on May 26, 2022; and exhibit 12, Hough's resume. All exhibits were received without objection.

*(i) Co-Occurring Evaluation and Progress Reports*

In the December 2021 co-occurring evaluation, McGhee reported to Riley that his grades were bad because he did not go to school and that he had "an IEP for behavioral issues." McGhee reported that he was a member of the "'Parkland Bloods' and that he was 'blessed' into this gang '2-3 years ago.'" McGhee claimed "he has family members and close friends who are gang members and feels like [his] involvement was inevitable." Riley observed that McGhee's "judgment was normal and insight intact despite allegiance to a street gang." He did maintain a "pleasant, engaged and respectful behavior" during the evaluation. Riley noted McGhee's "recurrent cannabis use resulting in a failure to fulfill major obligations at school or home and continued cannabis use despite having persistent or recurrent social or interpersonal problems." McGhee was identified as meeting "DSM V diagnostic criteria for Oppositional Defiant Disorder" as evidenced by "often annoyed, easily losing his temper," and often refusing to comply with rules from authority figures.

The April 4, 2022, progress report by Riley noted that McGhee's participation in therapy had been intermittent, although family therapy between McGhee and his mother had been consistent. The July 13 progress report indicated McGhee had been engaging with Riley "in a more respectful and attentive manner" since the last reporting period.

*(ii) Family Support Worker Reports*

Notes contained the "Family Support Worker Report" documents authored by Cortney Grixby provide brief summaries of sessions held in 2022 during the months of February (2 sessions), March (7 sessions), May (3 sessions), and June (3 sessions). In February, McGhee expressed that "he did not want to get in anymore trouble" and although he was a good athlete and used "to hang around a lot of positive individuals growing up," he was no longer "hanging with those same positive peers" and he did not like sports anymore "because it was boring." McGhee was "not motivated as of now to be engaged in any pro-social activities." In early March, McGhee was noted to still be "somewhat disengaged in services." McGhee's mother stated that "nothing is changing with [McGhee's] attitude from day to day." By mid-March, McGhee's anger issues were discussed; McGhee "tends to think he knows it all and does not want to take accountability for his actions." It was observed that McGhee "does not like to be told when he needs to change" and that he "feels he has nothing wrong with him and that he is doing good." When discussing boundaries and expectations at home, school, and in the community, McGhee "did not want to engage" in listening and the session ended because of a "power struggle."

By mid-May 2022, it was noted that McGhee's participation was "progressing" and that he was communicating more. However, he was continuing to make minimal progress at school and still "has minor issues with being told no"; he gets angry and lashes out when that happens. He also "can become verbally disrespectful at times." There were no negative reports of McGhee "showing safety concerns in the community." In the first part of June, it was noted that McGhee had "improved with his participation and communication with family support and gang intervention services, but it does not translate across all services that [McGhee] is involved with." It was observed that McGhee still needed improvement with school attendance and grades, but there were "[n]o issues in the community" at that time.

### (iii) Education Reports

An IEP document reflected a meeting date of August 31, 2021, and was developed for the 2021-22 school year, with McGhee being in the 9th grade. It revealed that McGhee engaged in behavior that was significantly disruptive more often than his peers, it took him longer to accept redirection than his peers, and "his behaviors are often of a higher intensity in terms of how disruptive they are, when compared to his peers." A "Progress Report" to that plan dated March 21, 2022, reflected "Insufficient Progress" as to all IEP goals. The "Report of Education Counsel" filed with the juvenile court on May 26, indicated that in December 2021, McGhee had a "capacity to perform at grade level, but was far below grade level in reading and had no high school credits for the year." A new IEP was put in place in January 2022 "with more supports" but McGhee's attendance was "sporadic" and "when he would attend, he was combative and evidenced multiple behaviors." Adjustments were made in April, and since then McGhee "had no behavior incidents" and had "earned 6 credits toward graduation." McGhee was enrolled for summer school, scheduled to commence June 8. One staff member described McGhee's emotional and social progress as "'pretty awesome.'" The education counsel concluded that McGhee was "on track" to "become successful in his current education environment." The "supports" were in place by the school district and McGhee had "shown a willingness to make progress, the capacity to achieve," and had "begun to develop a trust in his own abilities and the ability of the school to work with him."

### (iv) Juvenile Probation Officer's May 2022 Email

Hough's May 9, 2022, email provided an update on McGhee indicating the following: Hough was still waiting to hear from group homes; McGhee had been more "up and down" versus "all downhill"; McGhee had a good week of school but "last week was rough again," he "wanders the halls and doesn't engage," and his teachers report he is difficult to motivate; McGhee often violates curfew; all prior drug tests "for about 2 months were positive for THC," although he tested negative "this last week"; McGhee and his mother had not engaged in "MST services for about 3 weeks"; McGhee was doing a better job of meeting with his counselor but was "still lacking any real motivation or follow through"; and the "only potential recommendation" would be "shelter" versus a group home "as maybe he just needs a short term reboot to get him on track versus a 9 to 18 months out of home."

### 3. DISTRICT COURT'S ORDER DENYING TRANSFER

In its December 2, 2022, order denying the requested transfer to juvenile court, the district court evaluated all the factors under Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2022), which we will set forth later in our analysis. The court ultimately determined that the majority of the factors weighed in favor of the court retaining the case, and "[g]iven the serious nature of the charged offenses, [McGhee's] prior involvement in the juvenile court system, and the safety and security of the public," "the State has met its burden of establishing a sound basis for retention of jurisdiction." "Having balanced public protection and societal security against the practical and non-problematic rehabilitation of [McGhee], [McGhee's] Motion to Transfer to Juvenile Court shall be denied."

McGhee timely filed his notice of appeal on December 8, 2022.

## III. ASSIGNMENT OF ERROR

McGhee claims the district court abused its discretion by overruling his motion to transfer to juvenile court because the State failed to meet its burden to show a sound basis existed for the court to retain jurisdiction.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. LEGAL FRAMEWORK

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who: (1) are 11 years of age or older and commit a traffic offense that is not a felony, or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against such juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both allegations against McGhee put him within this category of juvenile offenders, and the State filed the charges against McGhee in the district court.

When McGhee moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to Neb. Rev. Stat. § 29-1816(3)(a) (Cum. Supp. 2022), which requires consideration of the following factors set forth in § 43-276(1):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may

- 8 -

require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt, supra.*

### 2. STATUTORY FACTORS AS APPLIED TO MCGHEE

McGhee contends the State failed to meet its burden of proving a sound basis for the district court to retain jurisdiction. Although he acknowledges that the court found 10 of the 14 factors weighed in favor of retaining the case, that two were neutral, and two favored transfer, he argues that the court's "analysis of the factors, reasoning, and rulings were clearly untenable, resulting in an abuse of discretion." Brief for appellant at 13. We will address each factor in turn.

### (a) Amenability to Treatment, § 43-276(1)(a)

When analyzing the type of treatment McGee would most likely be amenable to, the district court found this factor to be neutral. The court noted that the juvenile court had provided rehabilitative services to McGhee since December 2021, "including gang intervention services, family support, family and individual therapy, in-home intensive programming, GPS monitoring, drug testing and day reporting," and that Hough admitted these services had not been successful. The court also considered that McGhee had been denied acceptance at group homes in Omaha, and although accepted at two facilities out of state, "that was not accomplished because of the new charges underlying this case." The court acknowledged Hough's testimony that the juvenile court would likely have difficulty finding an out-of-home placement for McGhee due to the nature of

- 9 -

the pending charges and given that McGhee associated with gang members, but that Hough also testified that McGhee could benefit from more services if transferred to juvenile court. The court further found that "[a]ll the evaluations, reports and updates regarding [McGhee] that were provided to the Court pre-date the date of this underlying offense."

McGhee argues that the district court abused its discretion by viewing this factor as neutral. He contends that even if out-of-home placement was difficult to find, the YRTC was still an option. McGhee contends he had been improving prior to the new charges and there were still services available.

Although there was some evidence of improvement in McGhee's behavior prior to the July 17, 2022, incident, there was also evidence that his improved participation and communication with family support and gang intervention services did "not translate across all services" in which McGhee was involved. Further, despite showing some improvement in some areas, McGhee went on to allegedly commit the offenses for which he is currently charged. That certainly places his amenability to services in question and could arguably tip the scale in favor of retention. We cannot say the district court abused its discretion in finding this factor to be neutral.

(b) Violence, § 43-276(1)(b)

In considering whether there was evidence that the alleged offense included violence, the district court pointed out that McGhee was "driven to a residence, exited the vehicle, and discharged a firearm multiple times toward the residence leaving behind seven casings and a bullet hole in the front of the home," he then fled in the vehicle, and a subsequent search warrant resulted in the recovery of a "9 millimeter handgun and ammunition with the same head stamps as casings found on the scene of the shooting. . . . The alleged offense clearly involved violence" and therefore this factor weighed in favor of retaining the case.

McGhee argues that "there is no evidence that the charged offenses were committed in a premeditated or deliberate manner." Brief for appellant at 15. "Rather, the allegations and reports indicate that the actions were reactionary. [McGhee's] house had been shot at earlier." *Id*. He points out that he had been diagnosed with oppositional defiance disorder, and that Hough testified that this could impact a juvenile's decision making and impulse control. McGhee contends, "While the allegations are violent in nature, [McGhee's] age, coupled with his impulsivity, lack of decision-making and impulse control suggest reactive behavior, and not necessarily premeditated or deliberate actions of an adult." *Id*.

While McGhee's arguments attempt to explain why he may have engaged in the actions of July 17, 2022, such arguments cannot overcome the obvious fact that there is evidence that the alleged offense included violence, given that multiple gunshots were fired at a residence. The district court did not abuse its discretion in finding this factor favored retention.

(c) Motivation for Commission of Offense, § 43-276(1)(c)

The district court found that the "motivation for the offense appears to be retaliation for a gang-related shooting at [McGhee's] residence earlier the same day as this offense" and that this factor weighed in favor of retention.

McGhee contends that the "only statement regarding the reason [Tate] and [McGhee] got into the vehicle came from the interview of [Tate] herself," and according to Tate, "she had brought

[McGhee] to a friend's house." Brief for appellant at 15-16. McGhee further argues that if the motivation for the alleged shooting was in response to the earlier shooting, "this supports . . . that the shooting was not premeditated or thought out, but reactionary and akin to the . . . actions of a juvenile that cannot appreciate the seriousness and long term consequences of their actions," and supports transfer to the juvenile court. *Id.* at 16.

While motivation can only be circumstantially considered at this time, we cannot say the district court abused its discretion in finding a retaliatory motive by McGhee under the circumstances. While officers were at McGhee's residence investigating shots fired there, an officer's body camera video captured McGhee and his sister getting into a grey Kia approximately 12 minutes before a video shows the same grey Kia near the Sahler Street residence, McGhee exiting the vehicle, and McGhee firing multiple shots at a residence. This action took place within a couple hours of shots being fired at McGhee's residence. While motivation is yet to be determined, it was not an abuse of discretion for the court to find this factor favored retention given the possibility of a retaliatory motive in light of the Sahler Street shooting occurring within a couple hours of gunshots being fired at McGhee's house.

(d) Age and Circumstances, § 43-276(1)(d)

This factor considers the age of the juvenile and the ages and circumstances of any others involved in the offense. In finding that this factor weighed in favor of retention, the district court noted that on the date of the offense, McGhee was "approximately 7 months shy of his 16th birthday" and was now "approximately 2 months from turning 16 years old." The court also acknowledged the pending charges against McGhee's sister, Tate, for her actions as an accessory in this incident, and that "there is no evidence before the Court that she coerced [McGhee] to discharge the firearm."

McGhee points out that Tate "admitted to having a concealed carry weapon permit," and that Tate told officers that "the firearm found within another individual's purse belonged to [Tate]." Brief for appellant at 16. McGhee argues that "suggesting that these older individuals simply did not say anything to [McGhee] or interact with him during the alleged incident because it is not contained within any reports is ignorant of any relationship and/or social dynamics between [McGhee] and these older individuals." *Id.* at 16-17.

Arguably, being only 15 at the time of the incident might suggest this would be a factor weighing in favor of transfer. However, as argued by the State, consideration must also be given to whether there would be sufficient time to rehabilitate McGhee before the juvenile court would no longer have jurisdiction over him. McGhee is now 16 years old, leaving less than 3 years for rehabilitation. Given that McGhee was not fully successful with his juvenile court services from November 2021 until the time of the July 2022 incident, and had motions to revoke probation filed twice, it is difficult to have confidence that enough time would remain for McGhee's full rehabilitation before turning 19. We cannot say the district court abused its discretion in finding this factor favored retention.

(e) Juvenile's Previous History, § 43-276(1)(e)

This factor considers McGhee's previous history, including whether he has been convicted of any previous offenses or adjudicated in juvenile court. The district court found that this factor

weighed in favor of retention after summarizing McGhee's juvenile court proceeding that commenced in November 2021, including that the juvenile court had revoked his order of probation, out-of-home placement was being sought, and the juvenile court had determined he should be detained. Further, another motion to revoke probation had been filed.

McGhee contends he had started to make progress working with a gang intervention specialist, his engagement in therapy had improved, and he had pulled his grades up from failing to passing. Additionally, he emphasizes that he has "been adjudicated on only *one* delinquency offense." Brief for appellant at 18 (emphasis in original). However, as noted by the State, "While McGhee might not have a lengthy prior juvenile record, those prior charges and his eventual adjudication is reflective of very serious felonies." Brief for appellee at 18. "His ensuing juvenile probation period is marked by a lack of serious engagement with services, no meaningful progress, revocation filings, and this file containing new serious felony firearms offenses." *Id*. As such, the district court's "concern over those facts was not conjured unreasonably and this factor's contribution towards the court's refusal to transfer is not indicative of an abuse of discretion." *Id*. We agree.

### (f) Juvenile's Best Interests, § 43-276(1)(f)

The district court found this factor weighed in favor of transfer since it "very well may be in [McGhee's] best interest to be transferred to the Juvenile Court as opposed to being 1) a convicted felon, and 2) exposed to the possibility of serving a lengthy sentence of incarceration should he be convicted of the charged offenses." McGhee makes no argument as to this factor. The State "takes no issue with this conclusion" but contends that "this factor, combined with others similarly weighted by the district court, simply does not overcome the reasons for retention in district court." Brief for appellee at 18.

### (g) Public Safety, § 43-276(1)(g)

The district court found this factor weighed in favor of retention, noting that balancing individual justice with the needs of society will result in some youths being held accountable through the adult criminal justice system "'for effective deterrence of future antisocial misconduct.'" *State v. Alexander*, 215 Neb. 478, 486, 339 N.W.2d 297, 301 (1983). The court found that retaining jurisdiction "promotes the goals of specific deterrence . . . individuals who commit crimes and are . . . apprehended and punished will be deterred from engaging in future criminal activity[,]" as well as "general deterrence" in which the "general population will be deterred from offending when they are aware of others being apprehended and punished for their criminal activity."

McGhee directs us to Hough's testimony that she believed there was sufficient time to provide rehabilitative services to McGhee, including completing treatment at the YRTC. McGhee argues that if he "were placed in a facility such as a group home or in the YRTC, [he] would have a lesser chance of reoffending." Brief for appellant at 19. Although the YRTC is not "locked," he points to Hough's testimony that it "is very difficult . . . for juveniles to run from." *Id*. The State, however, points out McGhee's gang involvement for several years and his escalation to a possible gang-related shooting. Further, he committed this offense while still on juvenile probation, and this offense involved firing multiple shots at an occupied dwelling, striking it at least once. The

State contends that McGhee's "unabated conduct cannot be described in any other way than an ongoing threat to public safety." Brief for appellee at 19. We agree that the record supports the district court's conclusion that this public safety factor favored retention.

### (h) Ability to Appreciate Nature of Conduct, § 43-276(1)(h)

This factor considers the juvenile's ability to appreciate the nature and seriousness of the juvenile's conduct. The district court found this factor weighed in favor of retention because McGhee's "alleged possession and discharge of a firearm does not appear to be accidental or unintentional," and his "fleeing the scene after engaging in the proscribed conduct indicates an understanding of its serious and unlawful nature."

McGhee takes issue with the district court's focus on only the reports of the incident and not also considering his educational challenges, such as needing an IEP and reading below a 9th grade level. "Hough believed that [McGhee] did not present as a fully mature individual, was not sophisticated in thought and easily susceptible to peer pressure." Brief for appellant at 20.

While McGhee had some educational challenges, the record indicates that he had the "capacity to perform at grade level," but his failure to consistently attend school contributed to his deficient grades. McGhee's counseling records also reflect that he can show improvement when he wishes, but he did not want to engage in discussing boundaries and expectations at home, school, and in the community, and he did not like being told "when he needs to change." In May 2022, McGhee's education counsel reported that McGhee was "on track" to being successful in his education environment and that McGhee had shown a willingness "to make progress" and had the "capacity to achieve," and yet within a couple of months, McGhee made a decision to disregard that progress by possessing a firearm when it was unlawful for him to do so and then allegedly firing multiple shots at a residence. The record supports that McGhee had the ability to appreciate the nature and seriousness of his conduct on July 17, 2022.

### (i) Length of Detention Needed, § 43-276(1)(i)

This factor considers whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond the juvenile's minority and, if so, the available alternatives best suited to this purpose. In finding this factor weighed in favor of retention, the district court pointed out the severity of the two charges, with both being Class IC felonies punishable by a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. The court observed that the juvenile court would "automatically lose jurisdiction" over McGhee when he turned 19 "whether or not he had benefitted from the services provided to him." And, "[i]f convicted of these offenses as charged, . . . it appears that [McGhee] will continue in secure detention or under supervision for a period extending beyond his minority."

McGhee contends that the district court "failed to adequately consider [his] treatment amenability, the length of time needed for residential treatment, and the unlikelihood of recidivism if the matter were to be transferred to juvenile court." Brief for appellant at 20. He takes issue with the court focusing on the "lack of time the juvenile court would have jurisdiction of the case if this case were to be transferred." *Id*.

However, the time left for rehabilitation is an appropriate consideration. As this court has previously stated, a "trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated." *State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018). "The trial court's decision carries the consequence that if the decision is wrongly made, we have either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes." *Id*. We cannot say the district court abused its discretion by concluding that McGhee's rehabilitation may require detention beyond his minority.

(j) Restorative Justice, § 43-276(1)(j)

This factor considers whether the victim or the juvenile agree to participate in restorative justice. The district court stated that there was no evidence presented on this factor, and therefore found the factor to be neutral. McGhee does not challenge this finding.

(k) Juvenile Pretrial Diversion Available, § 43-276(1)(k)

This factor considers whether there is a juvenile pretrial diversion program established pursuant to Neb. Rev. Stat. §§ 43-260.02 to 43-260.07 (Reissue 2016 and Cum. Supp. 2022). These statutes allow a county attorney to establish a juvenile pretrial diversion program with the agreement of its county board, or a city attorney with the agreement of the city's governing body. See § 43-260.02. The goals of a juvenile pretrial diversion program are to provide eligible juvenile offenders with an alternative program in lieu of adjudication through the juvenile court, to reduce recidivism, to reduce costs and caseloads on the juvenile justice system, and to promote collection of restitution to the victim of the juvenile offender's crime. See § 43-260.03. There are numerous factors for the county or city attorney to consider whether to make juvenile pretrial diversion available, such as: the juvenile's age; the nature of the offense and the juvenile's role in the offense; the number and nature of previous offenses; the dangerousness or threat posed by the juvenile to persons or property; or recommendations of the referring agency, victim, and advocates for the juvenile. See § 43-260.04(1). As noted by the State, "the decision to admit McGhee into pretrial diversion rests with the county attorney and the county attorney's office stood opposed to his request to transfer into juvenile court." Brief for appellee at 22.

The district court concluded that this factor weighed in favor of retention because it did not "appear to be a realistic possibility that [McGhee] could participate in a pretrial diversion program should this felony case be transferred to the juvenile court." The court pointed out that the current felony offenses occurred while McGhee was already serving "an open-ended period of probation through the juvenile court and after his probation had already been revoked one time." The court further observed that even though McGhee was being supervised by an experienced probation officer "accustomed to supervising high risk youth," McGhee "appears to require an even higher level of supervision and structure."

McGhee argues that "the question is whether there is a juvenile pretrial diversion program established, not whether [McGhee] is a good candidate for pretrial diversion for this charged offense." Brief for appellant at 21. He claims this factor should have been neutral.

We are not persuaded to read this factor as narrowly as McGhee suggests. Since not all counties have diversion programs, this factor simply allows the district court to consider whether juvenile pretrial diversion is available, presumably as an option if the court decided to transfer the case to juvenile court. And given McGhee's inability to comply with his juvenile probation and the seriousness of the present charges, it was not unreasonable for the court to conclude that pretrial diversion was not a "realistic possibility" for McGhee.

### (l) Use or Possession of Firearm, § 43-276(1)(l)

This factor considers whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm. The district court found that this factor weighed in favor of retention because McGhee's "prior juvenile court charges involved firearms."

McGhee argues that even if his juvenile court adjudication involved firearms, "the court erred in characterizing this as a prior firearm 'conviction' in support of retention." Brief for appellant at 22. Regarding the present matter, he points to Tate saying that the recovered firearm belonged to her. He argues that "until this case is resolved," there are only allegations to suggest McGhee "utilized a firearm" in the present case. *Id*.

The district court did not erroneously characterize McGhee's prior juvenile adjudication as a "conviction"; rather, it referred to McGhee's "prior juvenile court charges." And given McGhee's plea of admission to carrying a concealed weapon and possession of a handgun by a minor for purposes of his juvenile court adjudication, he has voluntarily acknowledged his unauthorized possession of a firearm regardless of the circumstances involved in the present case. The record supports the court's conclusion that this factor weighed in favor of retention.

### (m) Not Amenable to Rehabilitative Services, § 43-276(1)(m)

This factor considers whether a juvenile court has issued an order under § 43-2,106.03 which indicates the juvenile is not amenable to rehabilitative services that can be provided under the juvenile code. The district court found this factor weighed in favor of transfer because there had been no previous juvenile court order finding that McGhee was not amenable to rehabilitative services available under the juvenile code. McGhee agrees with this finding.

### (n) Criminal Street Gang Member, § 43-276(1)(n)

The district court found that this factor weighed in favor of retaining jurisdiction because Hough testified that McGhee reported he associated with gang members, and McGhee had reported in his co-occurring evaluation that he was a gang member and has family members and close friends who are gang members. The court also found that although a gang intervention specialist was assigned to work with McGhee, he did not engage with gang intervention.

McGhee points to his improvement with engaging with the gang interventionalist, and that since being detained, he had been engaging with a gang intervention program at the Douglas County Youth Center. McGhee also contends that the State "did not put on any evidence as to how law enforcement defines a criminal street gang, how they are classified and membership is monitored, nor whether the Flatland Bloods are a confirmed street gang." Brief for appellant at 23. He claims the district court erred by considering McGhee a street gang member "by virtue of gang

intervention being ordered on his previous juvenile adjudication" and assuming McGhee is a gang member "without any evidence beyond [McGhee's] claims of gang affiliation." *Id*.

The fact that McGhee self-identified as a gang member and was provided gang intervention services could certainly be considered by the district court when finding this factor weighed in favor of retention. We cannot say the court abused its discretion in doing so.

### (o) Other Matters, § 43-276(1)(o)

McGhee agrees with the district court that no other considerations are applicable.

### 3. NO ABUSE OF DISCRETION

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). As set forth above, the district court's analysis of the statutory factors as applied to McGhee is supported by appropriate evidence, and we therefore cannot say that the court abused its discretion in refusing to transfer the case to juvenile court.

### VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying McGhee's request to transfer the case to the juvenile court.

AFFIRMED.